UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIBERACE WILLIAMS,              ) | NO. CV 04-1195-MAN |
|                                 ) | |
|             Plaintiff,          ) | |
|     v.                          ) | MEMORANDUM OPINION AND ORDER |
|                                 ) | |
|                                 ) | |
| JO ANNE B. BARNHART,            ) | |
| Commissioner of the             ) | |
| Social Security Administration, ) | |
|                                 ) | |
|             Defendant.          ) | |
| _____ ) | |

Plaintiff filed a Complaint on February 25, 2004, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for supplemental security income benefits ("SSI"). 42 U.S.C. § 1388(c)(3). On March 25, 2004, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on January 27, 2005, in which: Plaintiff seeks an order reversing the Commissioner's decision denying benefits and remanding for the payment of benefits or, alternatively, remanding the case to the Commissioner for a new hearing; and Defendant requests that the Commissioner's decision be affirmed.

The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on September 5, 2002. (Administrative Record ("A.R.") 55-57.)[1] Plaintiff claims to have been disabled since July 1, 1992, due to arthritis, hypertension, pain in his back and feet, and poor vision. (A.R. 15, 55.) Plaintiff has no past relevant work experience. (A.R. 17.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On October 7, 2003, Plaintiff, who was represented by a non-attorney, appeared and testified at a hearing before ALJ Arthur Cahn. (A.R. 14, 139-52.) In a November 20, 2003 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 13-19, 3-5.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his November 20, 2003 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of

---

[1] Plaintiff had previously filed applications for disability benefits. Plaintiff's most recent prior application was filed on April 17, 2000, and was denied by an Administrative Law Judge ("ALJ") on May 18, 2001. (A.R. 13.) Thus, in connection with the present application, the ALJ found that the period prior to May 19, 2001 was precluded from further review under the doctrine of *res judicata*. (*Id.*)

2

disability and had no past relevant work experience. (A.R. 17, 18.) The ALJ further found that Plaintiff: has a "limited level of education" pursuant to 20 C.F.R. § 416.964; for the period from May 19, 2001 through January 27, 2003, was a "younger person" pursuant to 20 C.F.R. § 416.963(c); and, as of January 28, 2003, became a person who is "closely approaching advanced age" pursuant to 20 C.F.R. § 416.963(d). (A.R. 18.) He found that Plaintiff has "severe" impairments consisting of left shoulder pain and degenerative changes in his left knee, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) The ALJ further found that "[Plaintiff's] allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." (*Id.*) Notwithstanding Plaintiff's "severe" impairments, the ALJ found that Plaintiff is capable of performing "medium" work, "can stand and walk for 6 hours in an 8-hour workday," and can "sit for 6 hours in an eight-hour workday."[2] (A.R. 15, 18.) According to the Medical Vocational Guidelines (the "Grids"), under Rule 203.25 (for the period when Plaintiff was considered to be a "younger individual) and Rule 203.18 (for the period when Plaintiff was considered to be an "individual closely approaching advanced age"), Plaintiff was not disabled.[3] (A.R. 18.) Thus, the ALJ concluded that

---

[2] "Medium work" involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[3] Under Rule 203.18 of the Grids, a person who is "closely approaching advanced age," with "limited or less education," with unskilled or no past relevant work, is "not disabled." Under Rule 203.25, a "younger individual," with "limited or less education," with unskilled or no past relevant work, is "not disabled." 20 C.F.R. Pt. 220, App. 2.

Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113, 117 S. Ct. 953 (1997).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id*. at 1041; *see also*

4

Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges a single issue, namely, he contends that the ALJ improperly rejected his testimony regarding his limitations. (Joint Stip. at 4.)

**A.   The ALJ's Stated Reasons For Rejecting Plaintiff's Testimony Were Improper.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to his subjective symptoms merely because they are not corroborated by objective evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1147-48 (9th Cir. 2001); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). As the Ninth Circuit has explained:

> [A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical or diagnostic evidence to support the severity of his pain, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (stating that "it is the very nature of excess pain to be out

>    of proportion to the medical evidence"), a finding that the
>    claimant lacks credibility cannot be premised wholly on a lack
>    of medical support for the severity of his pain.

Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997). This rule is based on the recognition that symptoms and pain are inherently subjective phenomena, which cannot be objectively verified or measured and vary significantly among individuals. Bunnell, 947 F.2d at 347. *See also* Social Security Ruling 96-7p ("Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.")

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony, such as conflicts between the claimant's testimony and his activities, or internal contradictions in the claimant's testimony. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Light, 119 F.3d at 792. In determining whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider:  "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

6

prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

The Court gives great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). However, when an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Oreteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.") When discrediting a claimant's testimony, it is not enough for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests that the complaints are not credible. *See* Swenson v. Sullivan, 876 F.2d 683, 688 (9th Cir. 1979); *see also* Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)(an ALJ may reject a plaintiff's testimony based on lack of credibility only if the ALJ states specific and cogent reasons for doing so).

In finding Plaintiff's testimony regarding his symptoms to be not

7

credible, the ALJ stated:

> Apart from the objective evidence, there are substantial subjective reasons pursuant to the guidelines of SSR 96-7p to conclude that [Plaintiff's] symptoms do not preclude the performance of substantial gainful activity within [Plaintiff's] residual functional capacities, listed above. [Plaintiff] reported, in a form that he completed (Ex. B-3E, pp. 1-3) that he continues to be capable of dressing himself, cooking, and shopping for himself. The undersigned notes that the physical capabilities requisite for performing these household tasks replicate those necessary for obtaining and maintaining employment. This detracts from [Plaintiff's] credibility.

(A.R. 16.)

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for disregarding his testimony. Specifically, Plaintiff contends that the sole basis for rejecting his claimed limitations, *to wit*, that his daily activities of dressing himself, cooking, and shopping indicate that he is capable of working, constitutes error, because the ALJ failed to show how Plaintiff's reported activities are inconsistent with his claimed limitations. (Joint Stip. at 5-7.)

///

1    At the October 7, 2003 hearing, Plaintiff testified that he has a
2 "little bit" of pain in his back, but mostly has pain in his left leg,
3 left knee, shoulder, and hands.  (A.R. 145, 147.)  He testified that
4 when he walks, his leg feels "like it want[s] to break" and "fold up."
5 (A.R. 146.)  When he grips a bottle or washes dishes, his hands cramp,
6 which happens "a lot," and happened three or four times during the week
7 of Plaintiff's hearing.  (A.R. 147.)  Furthermore, Plaintiff testified
8 that he uses a cane to get up from bed, and that cane was given to him
9 by his physician.  (A.R. 150-51.)

11   When the ALJ questioned Plaintiff as to how far he could walk
12 before needing to stop, Plaintiff testified that he lived in the middle
13 of the block and could "barely get to the corner before [his] leg
14 start[ed] [to act] up and the other one . . . going right along with
15 it," which would cause him to "stop for a minute and then keep going."
16 (A.R. 148-49.)  When the ALJ questioned Plaintiff as to whether he had
17 any problem lifting, Plaintiff testified that he has "just a little bit"
18 of a problem, because he cannot bend "regular."  (A.R. 149.)  When the
19 ALJ questioned Plaintiff if his legs had ever given out on him when he
20 was trying to ambulate, Plaintiff testified that his legs had given out
21 "going up some stairs," and that he fell while carrying a box with a
22 television in it.  (A.R. 150.)  When the ALJ questioned Plaintiff as to
23 what he did during the day, Plaintiff testified:  "Well, I do a little
24 walking.  I sit and -- I have to sit because it bothers me. . . .  Then
25 I try to do a little yard work.  Just a little yard work.  Something to
26 keep me busy, not to let this worry me down."  (A.R. 144.)  Plaintiff
27 further testified that he has someone who helps him at home.  (*Id.*)

1    In discounting Plaintiff's pain testimony, the ALJ relied upon the
2 statements that Plaintiff made in his October 29, 2002 Daily Activities
3 Questionnaire regarding his daily activities.  In this Questionnaire,
4 Plaintiff stated that he lived with his family.  (A.R. 83.)  In
5 describing what he does to care for his personal needs, Plaintiff simply
6 listed dressing, cooking, and housekeeping, and noted that he needed
7 assistance with such things.  (*Id.*)  Plaintiff stated that he walked "as
8 far as [he could] until the pain starts," and that he is "very tired"
9 and experiences "weakness of the knees."  (*Id.*)  He stated that he
10 climbs "as many [stairs] as [he can] by hanging on the rail," and that
11 climbing stairs was "very difficult."  (A.R. 84.)  He stated that he
12 **lifted** things, such as a table chair, night stand, or a small bag of
13 goods, but he does not **carry** anything now.  (*Id.*)  He stated that he
14 "sometimes" does his own grocery shopping, and he cleans his own living
15 area with assistance.  (*Id.*)  Plaintiff stated that he does not drive a
16 car, and he engages in no outdoor hobbies or activities. (A.R. 84.)  He
17 further noted that he uses a cane.  (A.R. 85.)  In describing his
18 functional limitations in his undated but apparently contemporaneous
19 Pain Questionnaire, Plaintiff stated that he is able to stand one to two
20 hours at a time and sit for one to three hours at a time, and is able to
21 do errands such as going to the Post Office or grocery store without
22 assistance.  (A.R. 88.)

24    Here, the ALJ erred by failing to provide any valid reasons, much
25 less clear and convincing reasons, for rejecting Plaintiff's testimony
26 at the hearing regarding his pain and limitations, *i.e.*, his left knee
27 and leg pain, for which he sometimes uses a cane and which precludes him

10

from walking a half a block without a break and sometimes causes his leg to buckle, as well as his difficulty gripping with his hands. The ALJ's sole reliance on his conclusion that the daily activities cursorily listed in Plaintiff's Questionnaire demonstrates an ability to work was not an adequate basis for finding Plaintiff to lack credibility.

While the ALJ may look at Plaintiff's daily activities as a basis for determining whether Plaintiff can perform certain work, the ALJ's decision fails to demonstrate how Plaintiff's abilities of dressing himself, cooking, and shopping, without more, correlate to the ability to be engaged in full-time work. *See* Vertigan v. Halter, 260 F.3d 1044, 1048 (9th Cir. 2001)(ALJ's reliance on the claimant's testimony regarding her daily activities -- that she was able to go grocery shopping with assistance, walk approximately an hour at the mall, play cards, swim, watch television, and read -- in finding that such daily activities involved physical functions that were inconsistent with her claims of pain was in error, as such activities did not consume a "*substantial part*" of the claimant's day)(emphasis in original); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990)(daily activities may not be relied upon to support an adverse credibility decision where those activities do not affect the claimant's ability to perform appropriate work activities on an ongoing and daily basis).

Significantly, the hearing transcript reflects that the ALJ did not vigorously examine Plaintiff regarding his daily activities, the amount of time he spends each day performing such daily activities, or how frequently he performs them, much less further inquire into Plaintiff's

11

specific functional limitations. Such an inquiry was critical in this case, as Plaintiff was not represented by an attorney at the administrative hearing. *See* Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)("where the claimant is not represented, it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and "be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.").

Certainly, "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)(*quoting* Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)). Plaintiff's testimony regarding his daily activities indicates, at best, a capacity for sporadic and unsustained activities. *See* Magallanes v. Bowen, 881 F.2d at 756; Fair, 885 F.2d at 603 ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Furthermore, although concluding that Plaintiff's daily activities "detracts from [his] credibility," the ALJ made no inquiry as to whether Plaintiff performs his daily activities on a schedule consistent with a 40-hour work week. *See* Social Security Ruling 96-8p (ability to sustain work activity means "8 hours a day, for 5 days a week, or an equivalent work schedule"); *see also* Lester, 81 F.3d at 833 (Commissioner must evaluate the claimant's "ability to work on a *sustained* basis")(citing 20 C.F.R. § 416.912(a))(emphasis in original). Thus, the ALJ's failure to consider the differences between Plaintiff's

12

daily activities and his ability to work eight hours a day, five days a week, is reversible error. Carradine v. Barnhart, 360 F.3d 751, 756 (7th Cir. 2004)(citing Vertigan, 260 F.3d at 1044, 1049-50).

Given the ALJ's failure to address, much less explain, how Plaintiff's minimal daily activities prove that he possesses the ability to work, the ALJ's terse equation of such daily activities to a lack of credibility on Plaintiff's part is not clear and convincing. Defendant asserts (Joint Stip. at 11-12) that, nonetheless, there was no error, because Plaintiff's limited treating records render Plaintiff's testimony regarding his limitations not credible,[4] relying on the following portion of the ALJ's decision:

> [Plaintiff's] treatment records from Watts Health Foundation, dated July 11, 2001 through August 12, 2002 (Ex. B-1-F, pp. 1-14), and Martin Luther King Medical Center treatment records, dated October 23, 2002 through July 22, 2001 (Ex. B-2F, pp. 1-4), show that while [Plaintiff] complained of having generalized pain through his hands and back which might be due to arthritis, these conditions could be treated conservatively

---

[4] Defendant's brief assertion that *res judicata* dictates that Plaintiff's allegations regarding his limitations are not credible is unavailing. *Res judicata* does not apply in social security cases when there are "changed circumstances." Chavez v. Bowen, 844 F.2d 691, 692 (9th Cir. 1988). Here, such changed circumstances exist, because the ALJ's decision dated May 18, 2001 holds that Plaintiff did "not have a severe impairment" at that time (A.R. 31), and the ALJ's decision dated November 20, 2003, which is at issue here, holds that Plaintiff now has "severe impairments" consisting of "left shoulder pain and degenerative changes in his left knee" (A.R. 18). Plaintiff also alleges that his subjective pain and limitations have increased. (*See* Joint Stip. at 15.)

13

> with pain medications such as Motrin and Tylenol. While [Plaintiff] was noted to experience hypertension, there is no indication throughout the records, that this condition led [Plaintiff] to experience symptoms such as fainting or extreme fatigue which would have a significant impact on his capacity to perform work-related tasks. Furthermore, there are no medical records indicating treatment for any visual problems. Therefore, [Plaintiff's] treatment records also support a finding that [Plaintiff] should be capable of performing a medium exertional level of work.

(A.R. 16.)

To the extent the ALJ arguably relied upon a lack of more aggressive treatment as a ground to reject Plaintiff's testimony regarding his leg, knee, and hand pain, it was improper to reject Plaintiff's testimony on that basis.[5]  Certainly, although they are limited, Plaintiff's medical records show that he has sought treatment for his back, leg, and hand pain.[6]  Moreover, as the ALJ found, Plaintiff

---

[5] However, the ALJ's reliance on a lack of medical records showing any symptoms arising from Plaintiff's hypertension, such as fainting or extreme fatigue, as well as a lack of treatment for Plaintiff's vision problems, was a proper basis for rejecting any limitations arising from Plaintiff's hypertension and claimed vision problems.  *See* <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001)(ALJ properly dismissed the claimant's credibility where the claimant failed to seek treatment despite his complaints of severe pain).

[6] (*See* A.R. 96 -- June 12, 2002 progress notes showing Plaintiff was seeking treatment for pain in his hands and knees, 98 -- March 19, 2002 progress notes showing Plaintiff experiencing pain in both hands; 100 -- November 19, 2001 progress notes showing that Plaintiff was

has the medically determinable severe impairments of pain in his left shoulder and degenerative changes in his left knee.  The ALJ's position seems to be that, if Plaintiff's pain stemming from these medically-determined impairments is as bad as he claims, his doctors would have prescribed a different course of treatment.  But the ALJ was not permitted to render a medical judgment and interject his own medical opinion on this issue.  *See* Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975)(an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record).

Given the ALJ's finding that objective medical evidence established an impairment that could be expected to cause Plaintiff pain, it was improper for the ALJ to find Plaintiff's testimony about that pain not credible simply because the ALJ believed that a stronger course of treatment would have been required for pain of the degree described by Plaintiff.  Critically, Plaintiff testified at the hearing that his treating doctor had recommended surgery for his knee and that his treating doctors were going to provide him stronger pain medication.  (A.R. 144, 146.)  The ALJ neither verified this information nor acknowledged it in his decision.  An ALJ may not reach a conclusion and then justify it by ignoring competent evidence in the record that would suggest an opposite result.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984); *see also* Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993)(ALJ must consider "all factors" that might have a significant

---

experiencing chronic cramps in both his hands and legs; 102 -- October 4, 2001 progress notes showing that Plaintiff complained of pain in his back when he breathes or moves.)

15

impact on claimant's ability to work).  Given that Plaintiff was not represented by counsel, it was incumbent upon the ALJ to obtain the medical records relating to Plaintiff's testimony about suggested surgery and a plan to prescribe him stronger pain medication *if* the ALJ believed that the course of treatment evidenced by the existing medical records somehow was inconsistent with Plaintiff's claimed pain.  *See, e.g.,* Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)(ALJ's special duty to fully and fairly develop the record and to assure the claimant's interests are considered, even when the claimant is represented by counsel).

Whether or not there may be appropriate reasons to find Plaintiff's pain testimony not credible, the ALJ did not provide clear and convincing reasons for doing so, and his conclusion does not rest on substantial evidence.  Accordingly, this was reversible error.

**B.   Remand Is Appropriate**.

In view of the ALJ's errors in his credibility rejection, this action must be remanded so that the ALJ can more vigorously examine Plaintiff regarding his daily activities and claimed limitations and verify Plaintiff's assertions regarding his potential surgery and his doctors' plan to provide him with stronger pain medication.  *See* Higbee, 975 F.2d at 562-63 (remanding case in order to develop the record where the claimant was not represented at the initial administrative hearing); *see also, e.g.*, Carradine, 360 F.3d at 755-56 (remanding case where the ALJ's credibility finding needed correction due to the ALJ's failure to

16

"consider the difference between a person's being able to engage in sporadic physical activities and her being able to work eight hours five consecutive days of the week."). After more fully developing the record, the ALJ should render a new credibility finding and factor that finding into his conclusion regarding whether Plaintiff's "severe" impairments cause him to be disabled.

## CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: February 22, 2006

                                                /s/
                                 MARGARET A. NAGLE
                      UNITED STATES MAGISTRATE JUDGE